**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| DAVID ANTHONY and ) | |
| HOLLY ANTHONY, ) | |
| ) | |
| Plaintiffs, ) | No. |
| ) | |
| v ) | |
| ) | |
| HAWK, HAYNIE, KAMMEYER ) | |
| & CHICKEDANTZ, LLP, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Come now the Plaintiffs, David Anthony and Holly Anthony (collectively "the Anthonys"), by and through their attorneys, Matthew D. Tanner, Tanner & Lehman LLC, and for their Complaint against the Defendant states as follows:

**Parties, Jurisdiction and Venue**

1. The Anthonys are, and at all relevant times have been, husband and wife, and are citizens of the State of Illinois.

2. Defendant Hawk, Haynie, Kammeyer & Chickedantz, LLP (hereinafter "Hawk Haynie"), is a law firm operating as a limited liability partnership organized under the laws of the State of Indiana, with its principal offices located in Fort Wayne, Indiana. Each of the firm's partners is a citizen of the State of Indiana.

3. Jurisdiction in this Court is premised upon 28 U.S.C. § 1332, in that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different States.

4. This case arises out of legal representation in litigation in the Circuit Court of Branch County, Michigan, which itself arose out of work performed on real property located in Branch County, Michigan.

5. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

**Common Allegations**

6. The defendant law firm represented the Anthonys in a dispute against a building contractor.

7. Defendant unreasonably insisted on continuing that litigation for almost 13 years, and collected against the contractor on a civil judgment, notwithstanding that they had already collected against the contractor's principal in criminal restitution years earlier, resulting in what was held to be a double recovery to the Anthonys, who then were required to repay the civil judgment plus hundreds of thousands of dollars in interest and opposing parties' legal fees.

8. Defendant also collected a portion of the civil judgment for itself as a contingent fee, and has refused to disgorge that contingent fee, notwithstanding that the civil judgment was later reversed and required to be repaid to the contractor.

9. In or about July 2000, the Anthonys retained the services of Hawk Haynie in connection with a dispute with a building contractor that had failed to properly perform its obligations on property the Anthonys owned in Coldwater, Branch County, Michigan.

10. In or about August 2000, Hawk Haynie, on behalf of the Anthonys, filed a civil suit against the contractor in the Circuit Court of Branch County. Hawk Haynie attorneys were admitted *pro hac vice* to practice in the Michigan court.

11. While that civil suit proceeded, Michigan authorities instituted criminal proceedings against one or more of the contractor's partners. One outcome of those criminal proceedings was that one of those partners, Dennis Clark Yoder, was ordered to pay restitution and attorneys' fees for the benefit of the Anthonys, in an amount ultimately totaling in excess of $400,000, all of which was collected by or at the direction of Hawk Haynie.

12. By mid-2006, Hawk Haynie had billed and collected attorneys' fees well in excess of $150,000 on its representation of the Anthonys, in addition to costs and fees for local Michigan counsel.

13. Also by mid-2006, having received restitution funds as a result of the criminal proceedings, the Anthonys repeatedly asked Hawk Haynie, through its partner David Hawk, if there was any way to bring the civil proceedings to an end. The Anthonys informed Mr. Hawk that they were exhausted by the nearly six years of litigation over the matter, that they did not wish to keep paying Hawk Haynie's ongoing bills, and that they questioned what remained to be accomplished following the collection of the amounts received in criminal restitution.

14. In response to the Anthonys' questions, Mr. Hawk falsely informed the Anthonys that there was no way to terminate the civil proceedings other than to see them through to completion.

15. In fact, as Mr. Hawk knew or should have known, an attorney acting with reasonable care, and with due regard for his duties to his client and to the court, could have

brought the litigation to a successful conclusion in far less time than the seven additional years the litigation continued, and with far better results for the Anthonys.

16. With regard to the Anthonys' expressed concern about ongoing attorneys' fees, Mr. Hawk agreed to convert Hawk Haynie's representation of the Anthonys to a contingent-fee basis.

17. In or about November 2006 — while the defendant in the Michigan civil action was in the process of appealing certain aspects of a civil judgment that had recently been entered against it — Hawk forwarded to the Anthonys a contingent-fee agreement entitled "Authority to Represent," a copy of which is submitted herewith as Exhibit A (the "Contingent Fee Agreement"). The Anthonys agreed to the terms of the Contingent Fee Agreement in or about December 2006.

18. Hawk Haynie advocated the transition to a contingent-fee agreement, after collecting years worth of hourly billable fees, without advising the Anthonys to seek guidance from independent counsel as to the fairness of the proposed change in terms.

19. The Contingent Fee Agreement recited some history of the litigation from August 2000 through March 2006, for which Hawk Haynie and local Michigan counsel had been compensated on an hourly basis.

20. The Contingent Fee Agreement provided that for services provided from April 1, 2006 "through the conclusion of this litigation and the appeals therefrom," counsel could retain as a contingent fee 33 1/3 percent of gross proceeds of any recovery, "after any setoff to which Yoder [the defendant in the criminal action ordered to pay restitution] may be entitled . . . ."

21. The Contingent Fee Agreement specifically provided that the above-described contingent fee "shall cover all appeals and re-trials."

22. The Contingent Fee Agreement provided that the Anthonys would retain responsibility for expenses "exclusive of lawyers' fees . . . ."

23. By August 2007, the appeal from the civil judgment had been completed, and the Circuit Court of Branch County had entered an amended judgment in favor of the Anthonys.

24. On or about August 21, 2007, Hawk Haynie converted to cash one or more letters of credit that the civil defendant had filed as an appeals bond, totaling some $375,000, based upon the amended judgment. When the Anthonys expressed to Hawk Haynie (prior to the appeals bond being converted) their concern that they might not be entitled to the money, Hawk Haynie repeatedly assured them that the judgment they were collecting on was no longer subject to review or modification; that the Anthonys' concern about the ability to collect the civil judgment notwithstanding resulted from their failure to compare "apples to apples;" and that there was essentially no overlap between the monies collected in criminal restitution and those being levied upon as a result of the civil judgment.

25. Hawk Haynie drew upon the appeals bond notwithstanding its knowledge that counsel for the contractor and/or Yoder was seeking a preliminary injunction to prevent this from happening. Hawk Haynie, through Mr. Hawk, expressed the view on August 21, 2007 that if the bank paid on the appeals bond, "the [preliminary injunction] issue will be moot . . . ." The following day, Mr. Hawk wrote that if the contractor's/Yoder's counsel "had any hair left, I think he pulled it out yesterday when he discovered that I continued to pursue the collection of the funds from the letter of credit."

26. Hawk Haynie drew upon the appeals bond without first taking any steps to ensure that the court in the civil action was even aware that amounts had already been collected in criminal restitution. Under applicable Michigan law, one who pays restitution is entitled to a setoff against an award of compensatory damages; Hawk Haynie, which specifically referenced Yoder's entitlement to a setoff in the Contingent Fee Agreement, was at all relevant times aware of this rule of law.

27. On October 29, 2007, Mr. Hawk wrote to the Anthonys to indicate that Hawk Haynie was holding $377,895.23 (comprised of the $375,000 collected from the appeals bond plus interest), and stated: "I will retain a 1/3 contingency fee plus my expenses (13,022.46 for the Bird firm [Michigan local counsel] and 313.00 for my additional out-of-pockets) . . . ."

28. Notwithstanding that the Contingent Fee Agreement provided that all attorneys' fees would be governed by the contingent-fee arrangement, and that the Anthonys bore responsibility only for expenses "exclusive of lawyers' fees," Hawk Haynie sought to collect, in addition to its contingent fees, "expenses" for the payment of the Bird firm's lawyers' fees and its own firm's lawyers' fees (for work performed after the effective date of the Contingent Fee Agreement). This includes not only the $13,022.46 noted in Hawk Haynie's October 29, 2007 email, but also tens of thousands of dollars in other attorneys' fees (for Hawk Haynie and the Bird firm).

29. When the Anthonys challenged the charge for the Bird firm as "expenses," Mr. Hawk admitted that he "had always billed [Bird's] time as an expense," while noting that he could "certainly see how you could interpret" the Contingent Fee Agreement to preclude such a practice. Mr. Hawk offered to delete the $13,022.46 charge, but has never offered to repay other

amounts charged to the Anthonys for Hawk Haynie's and Bird's services after the effective date of the Contingent Fee Agreement.

30. By February 2008, the Michigan Court of Appeals held that the circumstances under which the criminal restitution payments had been paid out was "manifestly unjust," and that (as the Court of Appeals described its 2008 holding in a later ruling) the Anthonys had "obtained a double recovery because a total of $445,892.56 in restitution paid by Yoder was released to the Anthonys in addition to the satisfaction of the civil judgment."

31. The trial court in the civil action concluded that Hawk Haynie was culpable as having "unclean hands" in connection with collecting on the civil judgment as well as the criminal restitution payments.

32. In March 2013, the Michigan Court of Appeals remanded to the circuit court (which was handling the Anthonys' civil action against the contractor) "for entry of a repayment order."

33. In April 2013, Hawk Haynie advised the Anthonys that they (the Anthonys) needed to obtain legal consultation regarding an appeal of the Michigan Court of Appeals' decision to the Michigan Supreme Court.

34. Notwithstanding the provision in the Contingent Fee Agreement that all lawyers' fees were included, including for "all appeals," Hawk Haynie informed the Anthonys in writing on April 24, 2013 that it would not seek further review of the Court of Appeals' March 2013 ruling; that the Anthonys "need to consult with an attorney who is expert in the area of Appeals to the Michigan Supreme Court;" that it would be the Anthonys' responsibility to retain and pay

for counsel for any such appeal; and that any such action "should be completed no later than May 1st," 2013.

35. In its April 24, 2013 communication to the Anthonys, Hawk Haynie also asserted that its Contingent Fee Agreement with the Anthonys was no longer in effect, that "we have not only fulfilled our obligations under that agreement[;] we have gone beyond what was required by that agreement." Hawk Haynie claimed it had provided some of its recent services "[a]s a courtesy" without compensation, "which we can no longer agree to do. It is therefore our expectation that we will charge our regular hourly rate for all work we do for you going forward."

36. The Anthonys reminded Hawk Haynie that pursuant to the Contingent Fee Agreement (which by its terms governed "through the conclusion of this litigation and the appeals therefrom," and which "shall cover all appeals and retrials"), it was not proper for Hawk Haynie to try to charge the Anthonys for its services, or to force the Anthonys to be responsible for securing and paying counsel to seek review of the Michigan Court of Appeals' decision. Hawk Haynie declined to change its position.

37. No further review was sought of the Michigan Court of Appeals' 2013 ruling.

38. On or about May 10, 2013, Hawk Haynie advised the Anthonys that the opposing side was prepared to stipulate to a judgment for repayment (by the Anthonys) of a total of $680,341.00 (including repayment of amounts collected, interest and attorneys' fees), and that the opposing side was prepared to accept $665,341.00 in satisfaction of such a judgment.

39. At the advice of Hawk Haynie, the Anthonys agreed to pay, and did pay, $665,341.00 (to Yoder, the contractor's partner) to finally resolve the civil litigation, some 13 years after it had commenced.

40. Notwithstanding that the "contingency" by which Hawk Haynie retained approximately $125,000 in fees (the civil judgment) was thus reversed (with the Anthonys being required to repay the entire civil judgment plus interest and the fees of opposing counsel) — and notwithstanding that the Contingent Fee Agreement specifically provided that the one-third contingent fee would be based only on amounts recovered "after any set off to which Yoder may be entitled" — Hawk Haynie has refused to relinquish that contingent fee.

41. Thus, after retaining Hawk Haynie to pursue a contractor that was liable to the Anthonys for wrongdoing (as found by both the civil and criminal courts in Branch County), and after thirteen years of litigation, the bulk of which the Anthonys made clear to Hawk Haynie that they had no desire to pursue, they ended up paying far more to the wrongdoers than they ever collected, plus hundreds of thousands of dollars in fees and expenses to Hawk Haynie.

42. The Anthonys would have been better off financially (by hundreds of thousands of dollars) had they simply permitted the contractor to get away with its misdeeds.

## COUNT ONE — BREACH OF CONTRACT

43. Plaintiffs, for paragraph 43 of their Complaint, reallege and reincorporate paragraphs 1-42 as though fully set forth herein.

44. The Contingent Fee Agreement was a binding contract between the Anthonys and Hawk Haynie.

45. The Anthonys at all times met all of their obligations pursuant to the Contingent Fee Agreement.

46. Hawk Haynie breached its obligations under the Contingent Fee Agreement, including by:

    (a) Billing and collecting hourly fees (its own and its Michigan local counsel's) from the Anthonys that should not have been billed or collected, since the work was done on a contingent-fee basis;

    (b) Collecting and retaining a "contingent" fee even after the contingency upon which that fee was based was reversed following additional court proceedings;

    (c) Including in the claimed "recovery" the set-off to which Yoder was found to be entitled, even though the Contingent Fee Agreement expressly provided to the contrary;

    (d) Refusing to pursue additional review of the Michigan Court of Appeals' 2013 ruling, notwithstanding its clear understanding that such additional review was worth pursuing; and

    (e) Demanding that the Anthonys retain and pay counsel for review of the Michigan Court of Appeals' 2013 ruling.

47. The Anthonys have been harmed by Hawk Haynie's breaches, in that substantial monies that should not have been retained have been retained, and in Hawk Haynie's failure to pursue further review of the Michigan Court of Appeals' 2013 decision, resulting in damages to be proven at trial.

WHEREFORE, the Anthonys seek a judgment in their favor, and against Hawk Haynie, for compensatory damages in an amount to be established at trial.

## COUNT TWO — BREACH OF FIDUCIARY DUTY

48. Plaintiffs, for paragraph 48 of their Complaint, reallege and reincorporate paragraphs 1-42 as though fully set forth herein.

49. Throughout all of the events described in this Complaint, Hawk Haynie and its attorneys held a fiduciary position with regard to the Anthonys, who reposed their faith, confidence and trust in those attorneys, and upon whom they relied for judgment and advice.

50. Accordingly, Hawk Haynie and its attorneys owed to the Anthonys the highest duty of care, the duty of honesty and continuing good faith and loyalty and restraint from self-interest.

51. Hawk Haynie violated that duty, including by:

(a) Billing and collecting hourly fees (its own and its Michigan local counsel's) from the Anthonys that should not have been billed or collected, since the work was done on a contingent-fee basis;

(b) falsely instructing the Anthonys that there was no way to bring their civil litigation to a prompt close;

(c) Collecting and retaining a "contingent" fee even after the contingency upon which that fee was based was reversed following additional court proceedings;

(d) Including in the claimed "recovery" the set-off to which Yoder was entitled, even though the Contingent Fee Agreement expressly provided to the contrary;

(e) Drawing upon the appeals bond to satisfy the civil judgment without taking steps to ensure that the court was aware of amounts that had been collected pursuant to criminal restitution;

(f) Refusing to pursue additional review of the Michigan Court of Appeals' 2013 ruling, notwithstanding its clear understanding that such additional review was worth pursuing;

(g) Demanding that the Anthonys retain and pay counsel for review of the Michigan Court of Appeals' 2013 ruling;

(h) Advising the Anthonys that they were required to pay the full repayment amount to Yoder, when at least some of that payment should have come from Hawk Haynie; and

(i) Entering into the Contingent Fee Agreement when it already represented the Anthonys in the same matter on an hourly basis, without advising the Anthonys to consult with separate counsel regarding the proposed new agreement.

52. Hawk Haynie's breaches of its fiduciary duties to the Anthonys directly and proximately caused them direct financial harm, and amounted to a betrayal of their trust, resulting in humiliation, outrage and indignity.

WHEREFORE, the Anthonys seek a judgment in their favor and against Hawk Haynie for economic and exemplary damages.

## COUNT THREE — LEGAL MALPRACTICE

53. Plaintiffs, for paragraph 53 of their Complaint, reallege and reincorporate paragraphs 1-42 as though fully set forth herein.

54. At all relevant times, the relationship between the Anthonys and Hawk Haynie was an attorney-client relationship.

55. Hawk Haynie was negligent in the performance of its legal representation of the Anthonys, including by:

12

   (a) Falsely instructing the Anthonys that there was no way to bring their civil lawsuit to a close;

   (b) Collecting criminal restitution amounts, and then collecting on the civil judgment appeals bond, without taking steps to ensure that there would be no grounds for a claim of double recovery;

   (c) Neglecting to pursue further review of the Michigan Court of Appeals' 2013 ruling; and

   (d) Failing to advise the Anthonys that they could not have recovery of criminal restitution in addition to recovery of the civil judgment, and in fact repeatedly advising the Anthonys that the criminal restitution was completely unrelated to their ability to collect on the civil judgment.

56. Had Hawk Haynie performed its legal representation competently, the lawsuit would have been over much more quickly than the 13 years it took to complete, and the Anthonys would have saved hundreds of thousands of dollars in legal fees and interest.

57. Hawk Haynie's negligent performance of its legal representation proximately resulted in the loss of hundreds of thousands of dollars to the Anthonys, and proximately resulted in the Anthonys enduring years of worry, mental anguish and emotional distress.

  WHEREFORE, the Anthonys pray this Honorable Court enter a judgment in their favor, and against Hawk Haynie, for economic and noneconomic damages in excess of $75,000 as well as an award for costs, interest and attorneys' fees as well as exemplary damages.

                                                   s/ Matthew D. Tanner
                                                   Counsel for Plaintiffs

Matthew D. Tanner
TANNER & LEHMAN LLC
53 West Jackson Boulevard
Suite 400
Chicago, Illinois 60604
312.588.1970

James R. Shinar
Beck, VanWagoner & Shinar, PLLC
The Comerica Building, Suite 800
151 South Rose Street
Kalamazoo, MI 49007
269.382.1483

## JURY DEMAND

      Plaintiffs, by their lawyers, Matthew D. Tanner and Tanner & Lehman LLC, hereby demand trial by jury as to all count so triable.

                                                   s/ Matthew D. Tanner